**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALONZO D. JONES, SR. | : | |
| | : | Civil Action No: 19-cv00229-JEJ |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| COUNTY OF YORK, et al. | : | |

**STATEMENT OF MATERIAL UNDISPUTED FACT IN SUPPORT OF DEFENDANTS', CHIEF MARK BENTZEL AND OFFICER PATRICK GARTRELL'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56**

Defendants, Chief Mark Bentzel and Officer Patrick Gartrell rely on the following exhibits in support of their Motion for Summary Judgment and Statement of Material Undisputed Fact:

A – Plaintiff's Complaint

B – Plaintiff's Deposition July 29, 2019

C – Plaintiff Deposition August 14, 2019

D – Police Reports and Documents produced in Discovery

E – Affidavit of Chief Mark Bentzel

F – Affidavit of Officer Patrick Gartrell

G – Affidavit of District Attorney David Sunday (to be filed by co-defendant)

**Plaintiff's Complaint – Exhibit A**

1. "Plaintiff Alonzo D. Jones, Sr…is an African American male citizen of the United states who resides at 526 N. Pershing Avenue, York City, York County, Pennsylvania. (EX A at 5)

2. Defendant Mark L. Bentzel,…is a Caucasian male who at all times relevant was the Chief of Police of the Northern York County Regional Police Department…" (Ex A at 9)

3. Defendant Officer Patrick G. Gartrell, Jr.…is a Caucasian male who at all times relevant was a Police Officer for the N[orthern York Regional Police Department]…" (Ex A at 11)

4. On February 8, 2017, Officer Gartrell was acting in his capacity as a member of the York County Drug Task Force [which is not a party to this action]. (Ex A at 13)

5. On that date, Officer Gartrell arrested Plaintiff for narcotics violations. (Ex A at 15)

6. Plaintiff was strip searched subsequent to his arrest, but denies that it was Officer Gartrell who did so. (Ex A at 17, Ex C at 111).

7. Plaintiff was transported to York Hospital pursuant to a search warrant where the hospital "…performed a MRI or CAT Scan." (Ex A at 19, 25)

8. No contraband or illegal substances were found from the MRI or CT Scan." (Ex A at 21)

9. Plaintiff was charged with narcotics offenses related to a *January 3, 2017* drug sale. (Ex A at 22)

10. On June 5, 2018, the charges against Plaintiff were dismissed because the Commonwealth of Pennsylvania had failed to prosecute him in a timely manner pursuant to Pa R. Crim. P. 600. (Ex A at 29)

**Plaintiff's Depositions (July 29 & August 14, 2019) – Exhibit B & C**

11. Plaintiff was arrested on February 8, 2017 outside of his girlfriend's apartment. (Ex B at 47)

12. Plaintiff initially ran from the occupants of an unmarked van, but stopped when they identified themselves as police. (Ex B at 53)

13. The officer who stopped him informed him that he was being arrested for dug sales to a confidential informant ("CI"). (Ex B at 53)

14. The officer(s) patted him down on the street, but did not recover any evidence from him. (Ex B at 54-55)

15. The two officers he initially encountered on the street were the same two officers who took him to York Hospital. (Ex B at 55-56)

16. Plaintiff never admitted to *selling* illegal narcotics. (Ex B at 57-58)

17. The last time Plaintiff sold illegal narcotics was 2004. (Ex B at 58)

18. Plaintiff and his girlfriend smoked marijuana in her apartment occasionally. (ex B at 61)

19. Plaintiff is not aware if anyone he purchased marijuana from was a confidential informant, and refused to identify anyone he purchased marijuana from (Ex B at 63-64)

20. The location where plaintiff was alleged to have sold narcotics to a confidential informant was on the same street as his cousin "Vetta Lowery" lives. (Ex B at 68)

21. Contrary to the allegations of the Complaint, Plaintiff does not know if anyone else was in the area when he was arrested. (Ex C at 19)

22. Officers did not believe Plaintiff when he said he did not have any illegal narcotics on his person. (Ex C at 22)

23. Plaintiff admits that he does not have a lost wages claim, as he has been disabled and unemployable since he was struck by a car as a juvenile, and shot in the face as an adult, resulting in seizures. (Ex B, Ex C at 24-5)

24. Plaintiff lost a cellphone valued at forty dollars, and thirteen dollars in case, as a result of his arrest. (Ex C at 28)

25. Plaintiff ***denied that race played any role in his arrest.*** (Ex C at 29-30, 41, 46)

26. The police arrested Plaintiff "Because they said I was someone they were looking for." (Ex C at 49)

27. Plaintiff's only interaction with the individual defendants is in conjunction with the facts alleged in his Complaint. (Ex C at 54)

28. Plaintiff believes his prosecution was dropped because of lost evidence. (Ex C at 56)

29. Plaintiff told doctors at York Hospital that he had a plate in his head and should not receive an MRI or CT Scan. (Ex C at 77-78)

30. Plaintiff is not aware of Officer Gartrell's race, but believes he is "Spanish". (Ex C at 82)

31. Plaintiff does not know if Officer Gartrell drove an unmarked police van toward him. (Ex C at 84, 87)

32. Plaintiff does not know if Officer Gartrell was the first Officer with whom he had contact. (Ex C at 85)

33. The driver of the van, and the officer who stopped Plaintiff, were two different officers. (Ex C at 88)

34. Plaintiff received an injury to his lip while being handcuffed. (Ex C at 93)

35. The officer who handcuffed plaintiff was a thinly built, "Spanish" officer, five foot eight inches tall. (Ex C at 85, 92)

36. Officer Gartrell is white, 6'2 and 320 pounds. (Ex F at ¶ 20)

37. Plaintiff believes that Officer Gartrell asked him questions at the police station, but that another officer strip searched him. (Ex C at 104-105)

38. Plaintiff believes Officer Gartrell took him to the hospital to be scanned. (Ex C at 108)

39. Officer Gartrell played no part is a cavity search of the plaintiff at the prison. (Ex C at 110)

**Facts Regarding Plaintiff's Drug Sales and/or Possession**

40. Plaintiff made drug sales from 153 and 157 Stevens Avenue, York PA, his cousin's street. (See: Ex D, SUF #20, above).

41. On June 15, 2016, Plaintiff, Alonzo Jones sold 3.21 grams of crack cocaine to a confidential informant. (Ex D at 3-4 of 13)

42. On January 3, 2017, Plaintiff Alonzo Jones sold crack cocaine to a confidential informant. (Ex D 5-6 of 13)

43. Arrangements were made with a confidential informant to make an additional crack cocaine purchase from Alonzo Jones on February 8, 2017, but he was arrested prior to making the sale. (Ex D at 6)

44. While at the police station strip searching Plaintiff following his narcotics arrest, Officer Gartrell saw what he believed to be a plastic bag in the area of Plaintiff's buttocks and attempted to retrieve it, to no avail. (Ex D at 6 of 13)

45. Officer Gartrell obtained a body cavity warrant from DJ Morgan, listing his observations, but a scan at the hospital did not reveal the presence of any drugs. (Ex D at 7 of 13)

46. Marijuana, crack cocaine and two digital scales were recovered from Alonzo Jones residence, which Plaintiff admitted were his. (Ex D at 7 of 13)

47. All charges against Alonzo Jones were held for trial after a preliminary hearing. (Ex D at 8 of 13)

***Monell***

48. Plaintiff does not, in fact, know what training Officer Gartrell has received, or should have received. (Ex C at 51)

49. Plaintiff is unaware of any prior acts of racial profiling in York County. (Ex C at 60)

50. Plaintiff is unaware of any selective prosecution based on skin color in York County. (Ex C at 61)

51. Plaintiff does not know who Chief Mark Bentzel is, and does not believe he has ever met him. (Ex C at 70-71)

52. Plaintiff does not know anything that Chief Mark Bentzel did, individually, that wronged him. (Ex C at 75)

53. Plaintiff does not know if Chief Bentzel was present for any of the interactions with police that are described in his Complaint. (Ex C at 75-76)

54. Chief Mark Bentzel was named as a Defendant in Plaintiff's lawsuit merely because he is a Chief of Police. (Ex C at 76)

55. Officer Gartrell attended the Basic Training for a municipal police officer which may be found at https://mpoetc.psp.pa.gov/training/Pages/Basic-Police-Officer-Training.aspx and includes nine hundred and nineteen hours of training in topics including: Drug law Enforcement (14 hours), Handling Arrested Persons (24 hours), Scenarios and Practical Exercises (40 hours), Juvenile Law and Justice (8 hours), Introduction to Law Enforcement in Pennsylvania (28 hours) Laws and Criminal Procedure (119 hours), Human Relations (17 hours), Patrol Procedures and Operations (105 hours) and Criminal Investigation (53 hours). (Exhibit D)

56. In addition, Officer Gartrell has received yearly updates as a police officer for Northern York regional Police Department and his former employer amounting to and additional twenty-four hours year, as a matter of state law. https://mpoetc.psp.pa.gov/training/Pages/In-Service-Police-Officer-Training.aspx

57. Over the course of his career, Officer Gartrell has been trained "in procedures concerning identifications, investigations, search and seizure, and the application and execution of a search warrant and matters of sensitivity when dealing with a person with racial and ethnic differences to prevent the practice, policy or custom of racial profiling" and "to prevent the practice, policy or custom of fabricating, embellishing, or omitting material information in affidavits to give the false or erroneous impression of probable cause for an arrest or search warrant" including, but not limited to: Power DMS training on identification procedures, municipal police

jurisdiction, arrest and detainment of juveniles, patrol procedures, property and evidence, the United States Constitution and Amendments, Crime Scenes and Criminal Cases, Rules of Criminal Procedure, Police Mission, Civil Law Guidelines, Mobile ID Exam, General Order 87 (Warrants); his basic and yearly training mentioned in the preceding two paragraphs to include: Case Law Legal Updates (every year), Procedural Justice & Police Legitimacy, Intelligence Assisted Policing, Advanced Interviewing Techniques, Conducting Complete Traffic Stops, ***Police & Minority Relations Course***, (18 hours) "Undercover Operations, Interview and Body Language...Raid Planning", (18 hours) "...Interview and Interrogation, The Use of Informants in Undercover Operations, Understanding the Sovereign Citizen...", Three-day Narcotics Officers' Association Conference, (8 hours) Interviewing Skills, Advanced Undercover Techniques & Survival, (48 hours) Undercover Drug Law Enforcement Training, (Five days) Advanced Undercover Techniques and Survival, "Top Gun" Investigating and Prosecuting Drug Cases, (40 hours) Role of the Undercover, (2 day) Non-Coercive Source Development Training, Basic Crime Scene Investigation, "Source Development", Threat Assessment and Management, Drug Raid Planning, narcotics Investigation-Reversals 1 & 2, DLETP Training (Drug Law Enforcement Training Program), Seizing Devices and Search Warrants, Civil Law, Threat Assessment and Management, ***Racial Intelligence Course, using RITE Tools for Law Enforcement and Public Service Professionals,*** Wiretap and Electronic Surveillance, (18 hours) "...Preparing Undercover Operations, Complex case Investigation...Vehicle Search and Seizure...", Field training Officer, "Search Warrants in Pennsylvania". (Exhibit D)

58. At all times relevant to Plaintiff's Complaint, Police Officer Gartrell was under the supervision and direction of the York County Drug Task Force. (Ex E)

59. Chief Bentzel did not directly supervise, direct or control Officer Gartrell during the times relevant to Plaintiff's Complaint, nor did he review or approve any of the affidavits or other documents he prepared relative to Plaintiff's arrest. (Ex E)

60. Patrick Gartrell is a sworn member of the Northern York County Regional Police Department, detailed full time to the York County

Drug Task Force, and a highly skilled and well trained law enforcement officer. (Ex E)

61. Pursuant to the Memorandum of Understanding between the County and the Northern York County Regional Police Board of Commissioners, and Policies of the York County Drug Task Force ("YCDTF) (Ex A to Defendants' Ex E):

    a. "The County agrees to train the Officer..."

    b. "The YCDTF is an investigative unit under the authority, control and direction of the York County District Attorney."

    c. "The Chief County Detective is the direct sworn supervisor of the York County Drug Task Force and is responsible for reporting any matters deemed necessary and/or relevant to the District Attorney, who maintains overall control of the YCDTF."

62. Pursuant to the York County Code § 179-54 Composition of Drug Task Force: "The York County Drug Task Force is a special prosecution unit of the York County District Attorney's Office. It consists of special deputy prosecutors dedicated to drug enforcement prosecutions and a number of County Detectives who participate and assist in the investigations." (Ex E)

**<u>Non-Favorable Outcome in State Court</u>**

63. District Attorney Sunday's office dropped an appeal of the Rule 600 dismissal of Plaintiff's case because it was not the best use of their resources, not because of any belief that Plaintiff was innocent. (Ex F)

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY: ______________________________
CHRISTOPHER BOYLE, ESQUIRE
ID# PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email: cpboyle@mdwcg.com
Attorney for Defendants Bentzel and Gartrell

DATE: November 1, 2019
LEGAL/125854216.v1

**CERTIFICATE OF SERVICE**

I, Christopher Boyle, Esquire, do hereby certify that a true and correct copy of Defendants', Chief Mark Bentzel and Officer Patrick Gartrell's Statement of Material Undisputed Fact in Support of Defendants, Chief Mark Bentzel and Officer Patrick Gartrell's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 was electronically filed with the Court this date and is available for viewing and downloading from the ECF System.

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

BY: ______________________________

CHRISTOPHER BOYLE, ESQUIRE
ID# PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email: cpboyle@mdwcg.com
Attorney for Defendants Bentzel and Gartrell

DATE: November 1, 2019
LEGAL/125854216.v1